UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
THOMAS GESUALDI and FRANK FINKEL,
Trustees of Local 282 International Brotherhood of
Teamsters Welfare, Pension, Annuity, Job Training
and Vacation Sick Leave Trust Funds, **MEMORANDUM AND ORDER**

                                Plaintiffs,                     10-CV-3499 (SLT)(SMG)

    -against-

ADVANCED READY MIX CORP.,

                                Defendant.
-------------------------------------------------------------------x
**TOWNES, United States District Judge:**

       In July 2010, Plaintiffs Thomas Gesualdi and Frank Finkel, the Trustees of the Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds (collectively, the "Funds") of Local 282 of the International Brotherhood of Teamsters (the "Union"), commenced this action against defendant Advanced Ready Mix Corp. ("Defendant"), seeking to recover delinquent fringe benefit contributions owed to the Funds. On January 3, 2011, this Court approved a Stipulation of Settlement between the parties (the "Stipulation") that provided, *inter alia,* that Defendant would pay $77,000 in nine monthly installments, but that Plaintiffs could enter judgment for $88,516.87 "with interest from October 21, 2010," plus other amounts, if Defendant failed to make the required payments. Defendant failed to make the required payments and Plaintiffs now move for judgment in accordance with the terms of the Stipulation. For the reasons set forth below, Plaintiffs are directed to submit a revised proposed judgment in accordance with this Memorandum and Order.

## BACKGROUND

In October 2008, Defendant signed a collective bargaining agreement with the Union (the "CBA"), which covered the period from 2008 to 2011. The CBA – a copy of which is attached as Exhibit B to the Declaration of Theresa Cody dated November 29, 2011 (the "Cody Declaration") – requires Defendant to make contributions to the Funds in accordance with elaborate provisions and detailed schedules set forth in the CBA. CBA at 14-15. These contributions, which are calculated based on the number of hours worked by Defendant's employees, are due 45 days after the close of the calendar month during which the contributions were earned. *Id.* at 15. In addition, the CBA provides that any employer who fails to pay the contributions "when due . . . shall be subject to all the remedies set forth in Section 502(g)(2) of ERISA." *Id.*

The CBA also incorporates by reference the Trust Agreement governing the Funds. *Id.* A copy of that Trust Agreement, which consists of the Restated Agreement and Declaration of Trust effective July 1, 1999 (the "Declaration of Trust") and several amendments thereto, is attached as Exhibit A to the Cody Declaration. The Declaration of Trust requires, *inter alia*, that Defendant submit "[d]etailed written reports" each month, regardless of whether any contributions are owed for that month. *Id*. at Art. IX, §1(c). The Declaration of Trust also provides a method for estimating the hours worked by Defendant's employees in the event that the hourly reports are not submitted as required:

> In the event the Employer fails to submit the required reports . . . , the Trustees, or their agents, may compute the sum due for any month by adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) reports submitted by the Employer (hereinafter referred to as the base month). . . . The total number of hours for

2

> the unreported period as determined aforesaid shall be multiplied
> by the current contribution rate, and the amount of contributions so
> computed shall be binding on the Employer and shall be deemed
> the amount due from the Employer for the purpose of any legal
> proceeding.

*Id.*, §1(e).

*This Action and the Stipulation of Settlement*

On July 30, 2010, Plaintiffs filed this ERISA action, alleging that Defendant had failed to pay fringe benefit contribution and/or delinquency charges owed to the Funds for the week ending March 5, 2010, the week ending March 19, 2010, and all subsequent weeks until May 29, 2010. On August 2, 2010, Plaintiffs served a copy of the complaint and a summons on Defendant through the New York Secretary of State. *See* Affidavit of Service of Maria Schmitz, dated Aug. 2, 2010 (Document #2). Defendant failed to answer the complaint within the time permitted by the Federal Rules of Civil Procedure and, on August 27, 2010, Defendant moved for a default judgment.

Three days after Plaintiffs filed their motion, an attorney filed a notice of appearance on behalf of Defendant. On September 2, 2010 – without moving to vacate the default or moving for permission to file a late answer – this same attorney filed an answer to Plaintiffs' complaint. Plaintiffs promptly objected to the filing of an answer but requested that the Court hold the motion for default judgment in abeyance to permit the parties to discuss resolution. Letter to Hon. Sandra L. Townes from Linc C. Leder, dated Sept. 3, 2010. In response to this request, this Court deemed the motion for default judgment to be withdrawn, but granted leave to renew the motion on or before November 1, 2010. *See* Order dated Sept. 9, 2010.

Settlement discussions dragged on for several months. On December 29, 2010, however, the parties finally filed an executed settlement agreement entitled, "Stipulation of Settlement" (the "Stipulation"). A copy of that Stipulation – which was "so ordered" by this Court on January 3, 2011 – is attached to the Cody Declaration as Exhibit E.

*The Terms of the Stipulation*

Since the terms of the Stipulation are central to the instant motion, this Court will discuss its provisions in some detail. In the first paragraph, the parties agreed to amend the Complaint to include the period beginning at the start of the week ending June 5, 2010, and ending on August 28, 2010. The parties then agreed that, for the period covered by the complaint, Defendant owed Plaintiffs a total of $88,516.87 as of October 20, 2010 – a sum which included principal, interest calculated at 18% per annum, liquidated damages and attorneys' fees.

In the second paragraph, the Stipulation stated that Defendant had agreed to pay, and that Plaintiffs had agreed to accept, $77,000.00 in satisfaction of the $88,516.87 debt actually owed by Defendant. This paragraph provided that the $77,000.00 was to be paid in nine monthly installments of $8,555.55, with one installment due on the first day of each of the first nine months of 2011. However, the Stipulation specifically noted that these payments did not affect or diminish "Defendant's obligation to pay current contributions." Stipulation at ¶2. In the third paragraph of the Stipulation, Defendant agreed to "keep current in submitting its reports and payments to Plaintiffs, which may become due and owing, beginning with the reports and payments due for the week ending October 1, 2010."

The fourth and fifth paragraphs set forth the remedies available to Plaintiffs in the event Defendant defaulted on its obligations under the Stipulation. The fourth paragraph provided that Defendant's president, Rocco Manzione, would execute an "Affidavit of Confession of Judgment in his individual capacity." That document would be held "in escrow" by Plaintiffs' counsel and would not be entered unless and until Defendant defaulted on its obligations under the Stipulation.

The fifth paragraph provided that if Defendant defaulted on its obligations under the Stipulation, Plaintiffs could "enter Judgment" against Defendant. If Defendant defaulted on its obligations under paragraph 2, however, by either failing to make an installment payment or paying with a check that was returned for insufficient funds, Plaintiffs would first have to provide Defendant with notice and ten days to cure. No notice was required if Defendant defaulted on any other obligations set forth in the Stipulation, including the obligation under paragraph 3 to keep current on contributions due for the week ending October 1, 2010, and thereafter.

The fifth paragraph described in detail the nature of the Judgment that could be entered in the event of Defendant's default. It provided:

> In the event that Defendant fails to cure any default as related to paragraph 2 above, or fails to make payment of any current contributions as related to paragraph 3 above, or defaults under any other terms of this Stipulation, then Plaintiffs may enter Judgment containing a Permanent Injunction as prayed for in the Complaint, for the full amount set forth in paragraph 1 above, with interest from October 21, 2010, together with all current contributions due, as determined by unpaid reports submitted by the Defendant or pursuant to the formula allowed in accordance with the Declaration of Trust and all additional attorneys' fees incurred by the Plaintiffs from October 21, 2010 and forward.

Paragraph 5 ended with two self-evident provisions: (1) that Plaintiffs could also enter the Confession of Judgment against Manzione in the event of a default and (2) that Defendant would be "entitled to credit for any payments actually received pursuant to the payment schedule set forth in paragraph 2 . . . ."

The remaining seven paragraphs of the Stipulation do not merit detailed discussion. However, this Court notes that paragraph 8 provided that, if Defendant made all nine installment payments as scheduled and was not in default under any other terms of the Stipulation, Plaintiffs would return Manzione's Confession of Judgment and file a Stipulation of Discontinuance in this case. Paragraph 11 provided that this Court would "retain jurisdiction for the purpose of enforcement of the terms of this Stipulation . . . ."

*The Instant Motion*

On February 11, 2011, Plaintiffs requested that this Court enter judgment in the amount of $126,156.51. In an affirmation accompanying the proposed judgment, Plaintiff's counsel stated that Defendant had paid the first installment of $8,555.55 on January 1, 2011, but had failed to make the installment payment due on February 1, 2011. Affirmation of Avram H. Schreiber in Support of Judgment ("Schreiber Affirmation") at ¶6. Plaintiffs' counsel further stated that Defendant had failed to file reports, or to pay the fringe benefit contributions due, for the weeks ending December 3, 10, 17, 24, and 31, 2010. *Id*. at ¶4. In support of his proposed judgment, which included attorneys' fees and costs for the period from October 21, 2010, through February 9, 2011, Plaintiffs' counsel attached several exhibits, including an excerpt from the Declaration of Trust, a single remittance report for the first week of August 2010 and a copy of attorney billing records.

In a memorandum and order dated September 29, 2011 (the "Prior M&O"), this Court noted certain deficiencies in the documentation submitted in support of the motion and directed that Plaintiffs amend their motion papers to include additional information. First, this Court noted that Plaintiffs had only provided a single, weekly remittance report, even though the language of the Declaration of Trust expressly provided for a system of estimating hours based on monthly data. Accordingly, the Court directed Plaintiffs "to select a base *month* in accordance with the definition set forth in [Article IX,] Section 1(e) [of the Declaration of Trust] from the twelve-month period immediately preceding December 2010 when making the calculation contemplated in that section." Prior M&O at 3 (emphasis in original). The Court also directed Plaintiffs "to submit all remittance reports applicable for that month, plus any other remittance reports that Plaintiffs deem to be appropriate" and "[c]omplete copies of the CBA and the Trust Agreement." *Id*.

On November 30, 2011, Plaintiffs responded to the Prior M&O by filing a "Motion for Default Judgment," consisting of a notice of motion, a memorandum of law ("Plaintiffs' Memo"), the Cody Declaration, and the Declaration of Michael S. Adler, Esq. (the "Adler Declaration").[1] Both the Cody Declaration and the Adler Declaration have several exhibits attached to them. These exhibits include complete copies of the CBA and Trust Agreement; all of the weekly remittance reports received from Defendant from October 8, 2010, to September 25, 2011; and billing records from Mr. Adler's law firm.

Collectively, these documents provide updated information concerning Defendant's payments to the Fund. First, the Cody Declaration states that Defendant paid the second installment of

---

[1]Mr. Adler is an attorney with the law firm of Cohen, Weiss and Simon, LLP, which was substituted as Plaintiffs' Counsel in October 2011.

$8,555.55 – *i.e.*, the installment due February 1, 2011 – on March 4, 2011. Cody Declaration at ¶25. Defendant also paid the third installment of $8,555.55 – *i.e.*, the installment due March 1, 2011 – but not until May 2, 2011. *Id*. Although Defendant made no further installment payments, it did send a "good faith payment" of $15,552.34 to the Funds on September 27, 2011. *Id*. at ¶26. The Fund applied this amount "to periods remaining due and included in the Stipulation," reducing the $88,516.87 due under the Stipulation to $47,297.88. *Id.* at ¶¶26-27.

The Cody Declaration also states that, with one minor exception, Defendant has paid all of the contributions due for the weeks ending October 8, 2010, through the week ending December 24, 2010. *Id*. at ¶¶29-30.[2] However, all of these payments were made several months late. All of the contributions owed for the four weeks prior to October 29, 2010, were made January 6, 2011; all of the contributions owed for the next four weeks, ending on November 26, 2010, were paid on February 1, 2011; and all of the contributions owed for the next four weeks, ending on December 24, 2010, were paid on May 3, 2011. *Id*. at ¶30. Although the Cody Declaration does not expressly mention the week ending December 31, 2010, this Court notes that a remittance report for this week states that there was "no work this week." *Id*., Ex. D.

In contrast, the Fund has not received any contributions at all for any of the 37 weeks during the first three quarters of 2011. *Id*. at ¶28.[3] Defendant filed remittance reports for all of those weeks, however, with the exception of the weeks ending April 1 and September 30, 2011. *Id*. In his declaration, Mr. Adler estimates the number of hours worked during these two weeks by taking the

---

[2]According to Ms. Cody, Defendant paid $2,271.40 for the week ending November 26, 2010 – 40 cents less than the $2,272.00 he owed for that period.

[3]According to the reports submitted by Defendant, no hours were worked during the weeks ending January 14 and 28, 2011, so no contributions were owed for those two weeks. *See* Cody Declaration, Ex. D.

greatest number of weekly hours worked during the 12 months prior to September 25, 2011, and increasing this number by 10 percent. *Id*. at ¶22. Mr. Adler implies that these calculations are in accordance with the estimation procedures set forth in the Declaration of Trust, *id.* (citing Trust Agreement at 28), and Plaintiffs' Memo cites to two cases allegedly endorsing Plaintiffs' counsel's calculation. Plaintiffs' Memo at 6.

## *DISCUSSION*

Preliminarily, this Court notes that the instant motion is not a motion for a default judgment pursuant to Fed. R. Civ. P. 55. This action was resolved by the Stipulation of Settlement, which was "so ordered" by this Court on January 3, 2011. As provided in the Stipulation, this Court retains jurisdiction only "for the purpose of enforcement of the terms of this Stipulation of Settlement." Stipulation at ¶11. Accordingly, the Court focuses solely on the parties' agreement as to the judgment to be awarded in the event Defendant defaulted on his obligations under the Stipulation.

The language of the Stipulation is unambiguous in describing the amount to be awarded. It provides that, in the event of a default, Plaintiffs are entitled to recover three sums: (1) "the full amount set forth in paragraph 1 [of the Stipulation], with interest from October 21, 2010;" (2) "all current contributions due, as determined by unpaid reports submitted by the Defendant or pursuant to the formula allowed in accordance with the Declaration of Trust" and (3) "all additional attorneys' fees incurred by the Plaintiffs from October 21, 2010 and forward." Stipulation at ¶5. The Stipulation further provides that Defendant is "entitled to credit for any payments actually received pursuant to the payment schedule set forth in paragraph 2 above.

The first of these three sums is easy to calculate. The "full amount set forth in paragraph 1" of the Stipulation is $88,516.87. While the interest rate is not specified in paragraph 5 of the Stipulation, a rate of 18% per annum was used in calculating the interest owed until October 20,

9

2010. Stipulation at ¶1. Presumably, the parties intended that this same interest rate would be applied in calculating the interest owed from October 21, 2010, to present. The interest owed to date on the $88,516.87 can be calculated using the formula for calculating simple interest: Interest = ($88,516.87 x 0.18) x (Days from October 21, 2010, to Present/365). *See* http://math. about.com/od/businessmath/ss/Interest.htm.

The calculation of the second of the three sums is complicated by two issues. First, Plaintiffs appear to read the term "current contributions due" as encompassing the interest and liquidated damages that they might have recovered under section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2) if they had chosen not to settle this action. However, the term "contributions," as used in §1132(g)(2) and elsewhere in ERISA, refers to the amounts owed to the Funds exclusive of interest or liquidated damages. There is nothing to suggest that the parties intended the term "contributions" to have a different meaning here. Indeed, paragraph 2 of the Stipulation states that Plaintiffs' agreement to accept the $77,000.00 in lieu of the amounts actually owed did not affect or diminish "Defendant's obligation to pay current contributions," and the term "current contributions" is used elsewhere in paragraph 5 of the Stipulation to refer to the payments with which Defendant is required to keep current under paragraph 3 of the Stipulation. In addition, paragraph 5 indicates that the "current contributions due" can be "determined" by reference to either "unpaid reports submitted by the Defendant" or "pursuant to the formula allowed in accordance with the Declaration of Trust." Neither interest nor liquidated damages can be determined in this manner.

The second issue which complicates calculation of "current contributions due" relates to the formula for estimating hours worked during weeks for which no report was filed by

Defendant. The formula set forth in the Declaration of Trust assumes that contributions will be determined based on monthly reports, stating, *inter alia*, that the "Trustees, or their agents, may compute the sum due for any month by adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) reports submitted by the Employer (hereinafter referred to as the base month)." Declaration of Trust, Art. IX, §1(e). However, because Defendant had not posted a Surety Bond, Defendant was reporting hours on a weekly, rather than monthly, basis. *See* CBA at 17.

In applying this formula, Plaintiffs effectively re-write the provisions of the Declaration of Trust to serve their own purposes. In determining the "base month," Plaintiffs determine the week – not the month – in which the greatest number of hours was worked: the week ending March 11, 2011. However, in determining the "previous twelve reports submitted by [Defendant]," Plaintiffs do not limit themselves to the 12 previous weekly reports, but appear to choose the week with greatest number of hours from the preceding 12-month period. Thus, in estimating the contributions due for September 30, 2011, Plaintiffs use the hours for the week ending March 11, 2011, even though these hours were reported 28 weeks earlier.

The cases cited in Plaintiffs' Memo do not countenance this approach. To be sure, both *Gesauldi v. Cirillo*, No. 09-CV-4570 (KAM)(JMA), 2011 WL 666196, at *3 (E.D.N.Y. Jan. 3, 2011) and *LaBarbera v. Rockwala, Inc.*, No. 06 Civ. 6641 (CPS), 2009 WL 1383294, at *5 (E.D.N.Y. May 15, 2009), estimate contributions using the formula set forth in the Declaration of Trust. However, since the remittance reports in those cases were submitted monthly, those cases did not address the issue which complicates the estimation of the contributions for the weeks ending April 1, 2011, and September 30, 2011, in this case. Moreover, there is nothing in

those cases or in the language of the Declaration of Trust to suggest that Plaintiffs have the latitude to interpret the provision of Article IX, §1(e), in any way that suits them.

In its Prior M&O, this Court suggested a method, consistent with the language of Article IX, §1(e), in which Plaintiffs could estimate the contributions due for the weeks ending April 1, 2011, and September 30, 2011, which involved the selection of a "base month." *See* Prior M&O at 3. However, because the hours were reported on a weekly basis, this Court finds that such a method would be unworkable. Instead, this Court will estimate the contributions using the following methodology. First, the Court will select the "base week" from the 12 weekly reports immediately preceding the week for which the remittance report was not submitted. The Court will then multiply the hours worked during the base week by 1.1 to calculate the "estimated hours," which can then be used to calculate the dollar amount of contributions owed to the Funds.

For the week ending April 1, 2011, the base week would be the week ending March 11, 2011, in which 284 hours were reported. As calculated in Plaintiffs' Memo, the estimated hours for this week is 312.4. However, for the week ending September 30, 2011, the base week would be the week ending July 8, 2011, in which 152 hours were reported. Accordingly, the estimated hours for this week will be 167.2.

The calculation of the third of the three sums to which Plaintiffs are entitled under the Stipulation is also simple. The Stipulation provides that Plaintiff shall recover "all additional attorneys' fees incurred by the Plaintiffs from October 21, 2010 and forward." Stipulation at ¶5. This Court interprets this language as permitting recovery of all attorneys' fees – but not costs – actually paid by Plaintiffs since October 21, 2010.

According to the Cody Declaration, the Law Office of Avram H. Schreiber billed Plaintiffs for attorneys' fees totaling $8,445.00 for services rendered after October 22, 2010. According to the Adler Declaration, Plaintiffs incurred another $7,197.50 in attorneys' fees for services performed by Cohen, Weiss and Simon, LLP. Plaintiffs are entitled to recover these amounts, plus any additional attorneys' fees incurred after the Adler Declaration was prepared.

## *CONCLUSION*

Plaintiffs are directed to submit on or before October 26, 2012, a proposed judgment in accordance with this Memorandum and Order. The proposed judgment will permit the recovery of $88,516.87, plus interest at 18% per annum for the period from October 21, 2010, to October 31, 2012 – the date on which this Court will enter judgment in this case – calculated in the manner set forth on page 10, *ante*. However, that amount will be reduced (1) by the $41,218.99 described in paragraph 27 of the Cody Declaration and (2) any other amounts which have subsequently been received by Plaintiffs and applied towards the $88,516.87 due for the period prior to October 20, 2010.

In addition, the proposed judgment will permit the recovery of unpaid contributions owed to the Funds for the week ending January 4, 2011, and any week thereafter. Plaintiffs shall provide, together with the proposed order, (1) a spread sheet setting forth the amounts of the unpaid contributions and (2) copies of the reports submitted by Defendant for any weeks after the week ending September 25, 2011. The proposed order will not permit recovery for interest or liquidated damages owed on any unpaid contributions, but will specify that these contributions are awarded without prejudice to seeking interest and liquidated damages for these unpaid contributions in a subsequent action. The contributions for any weeks for which

Defendant failed to provide a remittance report will be estimated in accordance with the methodology set forth on page 12, *ante*.

The proposed judgment will provide for the award of attorneys' fees for the period from October 21, 2010 to October 31, 2012. However, to the extent that Plaintiffs seek to recover attorneys' fees incurred after the Adler Declaration was prepared, the exact dollar amount of that award shall be left blank and Plaintiffs' counsel shall submit billing records supporting the additional fee requests.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: September 28, 2012
Brooklyn, New York